Next case is Edwards v. AHCornelland Son Mr. Swidler and the Department of Labor also is going to argue Mr. Lund, you've divided your time. Okay. Mr. Swidler, you may proceed. Thank you. Mr. Swidler for the plaintiff, for the appellant Shirley Edwards. Do you want to reserve any time for rebuttal? Two minutes, Your Honor. Thank you. The issue in this case, as Your Honors are aware, is an issue of first impression for this circuit, and it's an issue as to how to interpret the statute, and specifically Section 510 of ERISA. In Section 510 of ERISA specifically, there are two clauses which Your Honors must consider in determining whether Ms. Edwards' conduct was protected. And just very briefly, she was complaining about unlawful conduct as to how ERISA plans were being administered and to how members were being placed into those plans. Under Section 510, it's very explicit that it is illegal to discharge or retaliate, find, suspend, expel, or discriminate against any person because he has either given information or is about to testify or has testified in any inquiry or proceeding. And so the issue in front of this Court is how to interpret the terms inquiry and or proceeding in this context. And as our brief has argued and as the Secretary of Labor has argued, this Court has identified in the past proceedings and inquiries, specifically under the Clean Water Act, that that can be used in more of an informal setting. And we really have to look, and I know that Judge Joyner's decision put a lot of stock into the Second Circuit decision of Nassau. It's hard to say that someone complaining about something is involved in any type of inquiry. I know they're moaning and discussing, but there's no inquiry involved in that. Well, Your Honor, with respect, the Second Circuit specifically found that the act or an instance of seeking truth, information, or knowledge about something, that is the common definition of the word inquiry. The amended complaint, which is at issue, and of course, this is a Rule 12 motion, the record is fairly clear, is that my client learned of a number of unlawful procedures that are going on with respect to the ERISA plan and that she talked to her management about this. And I think it's almost impossible to distinguish who, it's not, the question, there's nothing in ERISA to say that whoever initiates the inquiry is not protected and the person who's responding to the inquiry is. The problem with your position, if I could take the devil's advocate, is that anyone who's fired from a job who made a gripe or something about some aspect of what was going on, can they say, well, I've been fired because I made a comment, I want to know about something, and now they fired me because they're doing away with any type of inquiry whatsoever. More than inquiry, complaint whatsoever. And so you open up a cause of action to a plethora of people that the statute was never meant to encompass. Well, Your Honor, and obviously that's something that we need to always be concerned about. However, I don't think that's what's happening here. Here we have a person who within two weeks of her termination is making complaints to her management, very explicit complaints, about things she has learned since she became the director of these plans. And she's learned that they're being administered illegally, that they're being administered on a discriminatory basis, that people are being lied to about the amount of money they would have to pay for these plans. And her learning that is part of an inquiry. Because it's her seeking the truth and the information of her job. Even under the Second Circuit case, this case should not be dismissed. Because to learn about the information requires going through the documents. That's a proper inference from the complaint, that she would have had to go through the documents. Mr. Svoboda, let me ask you a basic question. Are you arguing that this section, Section 510, is ambiguous? I don't believe it to be ambiguous, to be honest with you, Your Honor. I think it's very clear. I think that it has to be interpreted in a way which makes sense with the rest of the law. And when we talk about the word inquiry, and if you look it up in a dictionary, which the Second Circuit did, I think it absolutely is relevant and it is absolutely important to this distinction. Because the distinction that Judge Joyner made, and which I respectfully have to disagree with, and the distinction is that because my client went to them first, that is somehow not an inquiry. And I thought you'd argue the opposite. I thought that it seems to undermine your case because I thought you were going to argue that it's ambiguous and that we should accord Chevron deference to the Department's interpretation. Well, Your Honor, I think... You're saying that inquiry and proceeding is unambiguous and we should stop at the statutory language and hold as a matter of law that when someone who's in charge of a department who has all the knowledge that she needs to know complains about something, that that equals an inquiry or a proceeding? Your Honor, I believe that that does equal an inquiry or proceeding. And the reason, again, is because if we look at the definition of the word inquiry, and I think the word proceeding is ambiguous. And so perhaps I should have answered it that way. And the reason I think proceeding is ambiguous is because this Court determined in Passaic that that term is ambiguous under the Clean Water Act, and that then they should, of course, go to the Secretary's interpretation. But the word inquiry I do not think is as ambiguous. The word inquiry is, again, according to the Second Circuit case, which is citing the Webster's Third New International Dictionary, is the act or instance of seeking truth, information, or knowledge about something. The act or instance of seeking truth. So not necessarily... And that would involve any type of investigation. Telling your boss that they're violating federal law, that's not seeking anything. That's telling them that they're violating federal law. Well, Your Honor, I disagree. With respect, I think that if you tell your child, for instance, that you think that they're taking cookies from the cookie jar, well, that's a complaint, but it also starts the inquiry because the natural response would be to defend against that if it's not true. And it would be to have a conversation. And in fact, this is the very dangerous precedent that this case, if not overturned, sets. Because it means that as a supervisor, as a manager, an owner of a company, my best course of action... And I do have a red light here, but I would like to finish this point if I may, Your Honor. My best course of action is not to ask questions. It's not to find out if the law is being violated. It's to immediately fire the very first whistleblower. And in fact, then on, the only people who are protected... The problem is he didn't whistleblow to anybody except the boss. She went to the owner... There is a real difference. Well, Your Honor, it's been, again, under the Clean Water Act and under this court's admittingly dictum holding in Brock under the FLSA. The distinction between when you blow the whistle publicly and privately in intracorporate complaints, imagine what it would do to this court system if the only way a person could have a protected activity is to first bring the complaint to this court system. It would destroy the court system. And what it makes more sense from an economic perspective, which makes more sense from the way ERISA should be interpreted as a remedial statute, is to protect the first and most likely cause that an employee is likely to do, which is they're going to go to the managers, they're going to go to the directors, and they're going to try to deal with it informally. And hopefully, that informal conversation turns into some type of... Suppose she just said, you know, I think that as fiduciaries, you're being unfair to some of the participants in this plan. You're giving them more benefits than you are based on the amount of money that you have in the plan. And the owner says, you know what, why did we hire this woman to be head of HR when she's got ideas like this? Get rid of her. Is that in violation of Section 510? No, Your Honor. Because that hypothetical does not allege that my client would have complained about anything illegal under ERISA. If she's just saying that, I think that the way you're handling something is unfair but not illegal. And of course... She said as fiduciaries. She added as fiduciaries. I think it's unfair. Fiduciary denotes... Well, Your Honor, perhaps I should put it this way. If her complaint that something is unfair because the way the ERISA plan is being administered is actually in violation of the law, then yes, it would be protected. If it's unfair because of her sense of fairness but not based on ERISA, then no. If anything she says to them, she thinks you're violating the law the way you're doing this, and if they say get rid of her, that's a violation of 510. Yes, Your Honor. And that also goes... All right. Let's hear from the Department of Labor. Good morning, Your Honors. My name is Eric Lund. I represent the Secretary of Labor as amicus in support of appellant for reversal. At issue in this appeal is ERISA's anti-retaliation provision, Section 510, and specifically the language that states it shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information in any inquiry proceeding relating to ERISA. The Secretary believes that information in any inquiry readily encompasses unsolicited complaints and objections raised by employees to management and owners. Yeah, but we're construing a statute, and our first duty is to look at the plain meaning and reasonable interpretation of the words of the statute. That statute doesn't encompass anything other than what we have here, especially the very And if that's what our goal is, to look at the words of the statute, how is this encompassed within the statute? Well, Your Honor, I think that the means of the terms, giving information in any inquiry and proceeding, is subject to a number of different interpretations, perhaps as evidenced by the different circuit courts who have addressed the issue. And it's sufficiently ambiguous that reasonable minds can differ on the... Your argument's in contrast to that of your co-counsel. I'm not sure it is, Your Honor, but perhaps it is. But we do look at this as a statute. You think it's ambiguous? I think it is ambiguous, Your Honor, ambiguous enough that reasonable minds can differ and have differed on precisely what the interpretation of these statutory terms should be. All right, now, we're hearing from you this afternoon as an amicus. Yes, Your Honor. Why should we give you then... We appreciate you coming here, but why should we give you Chevron deference? Well, Your Honor, the Secretary's position vis-a-vis Section 510 has been consistent and has... It's not reflected in any ruling, any administrative decision, any regulation? It is reflected in the legal positions taken by the Secretary in her briefings in this matter. But hasn't the Supreme Court said that taking positions in brief is not entitled to the kind of deference as the Secretary's speaking in the other ways that Judge Fischer just mentioned? Well, I think the Court has said in cases such as our v. Robbins that interpretations in legal briefing can be an appropriate subject for deference, Chevron deference. Well, yeah, but briefing is a litigation posture. It's not something that you've taken regularly, consistently, and throughout other matters, as my colleagues have said, through a regulation. And if we were going to just look at the words of this statute, how can we say that what is alleged here is within the fair principles of statutory interpretation? Well, Your Honor, I think we should look at the congressional intent. No, we don't look at congressional intent if we have to go beyond the words of the statute. The statute has a very definite statement in it. It has nothing to do with people moaning or groaning about something that's going on at work. We're talking about inquiries. Any information, any inquiry proceeding, that's correct, Your Honor. And it's the Secretary's position that complaints to management and owners are part and parcel of an inquiry, or any information given in an inquiry. And in many cases, it's the very start of the inquiry itself. Much like in a lawsuit, Your Honor, one would not think of divorcing the complaint from the lawsuit itself, so too when you're talking about a complaint to an employer and the inquiry. They're part and parcel of each other, and they can see it's beginning. Inquiries generally don't start on their own. You're right, but that's what's strange about this case is that the statute doesn't use the word complaint. The first thing you said when you stood up was complaint, and I took note of that because the words used are inquiry and proceeding, which seems to suggest that had one of Shirley Edwards' underlings come to her with a complaint that had caused her to begin an inquiry, then there would be protection. But the boss, head of HR in this case, who initiates it on her own, initiates the complaint. There's only an inquiry if, I guess, the boss is really vigilant and says, gee, Shirley, thanks for the information. Why don't we investigate? And then she'd be protected. But if the boss just cashiers her, then statute seems to suggest she's not protected. Is that what the evil or the incongruity that the secretary is trying to avoid here, or is it something else? I think that's one of the odd and absurd results of an interpretation that excluded the complaints and objections from that definition of inquiry or proceeding. In the example you cite, Judge Hardiman, the employee that makes the complaint to the employee who does the right thing is protected. The employee who complains to the employer who does the wrong things and immediately just fires that employee, or on the basis of raising that sort of objection related to ERISA, is unprotected. It's not protecting the employee that needs it most, and that's the employee that is going to be terminated or some other employment action taken against them for raising such a complaint or objection to management. And that's the kind of behavior that we want, and ERISA really relies on in its enforcement scheme. It doesn't rely on detailed federal supervision or looking at payrolls directly. What it does rely on is employees, among others, and other persons coming forward and informing the Department of Labor or their employers that there isn't an issue here. And that's really how this statute is set up, and that makes perfect sense, because you want to allow the employer the first crack at trying to fix these sort of issues. And if the reaction of an employer is to fire the employee raising the objection, it's going to chill that sort of behavior, and it really will be counterproductive to the statutory enforcement scheme of ERISA. So we think that's precisely what sort of behavior should be covered, Your Honor. But to get into all of the statutory enforcement scheme and what's intended, we need to find that there's an ambiguity. I mean, neither of you really argue that in your briefs, but we need to find there's an Well, I think the ambiguity is present, Your Honor, and certainly reasonable minds can differ. I mean, you think because reasonable minds can differ on what an inquiry means, that's enough to get us to ambiguate. I think there is sufficient ambiguity, Your Honor. Your red light's on. You didn't reserve any rebuttal, Mr. Swidler. We'll have Mr. Swidler back for rebuttal. Let's hear from the opposing counsel, and we'll get your final word. Thank you, Your Honor. Mr. Flam. Thank you. May it please the Court, my name is Walter Flam. I represent the defendants in this matter. Let's start with the basics. Ambiguous or not ambiguous? Not. Not ambiguous. Your Honor. Not ambiguous. The whole question is whether this Court is going to make law or interpret law. If you look at... We're not in the business of making law. The law just does that. I believe that's what the Constitution says, Your Honor. Okay, but, you know, inquiry could mean a lot of different things to reasonable people, couldn't it? I think, Your Honor, it has to look at the laws as they're drafted. We pay these folks to go to Washington and draft these laws. And let's look at all the arguments that have been made here about the various laws. You've got whistleblowers that occur in a whole bunch of laws that have been cited around here. You've got ERISA. Let's come back to ERISA at the end. Let's take the Fair Labor Standards Act. It deals with the whistleblower. You can't discharge someone because the employee has filed any complaint or instituted or caused to be instituted any proceeding. All right? Now, the Title VII has a whistleblower provision, and that says that you can't discriminate against any employee because he's opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. We have Section 510. It says it's unlawful to discharge because he has given information or has testified or is about to testify in any inquiry or proceeding. So Congress has done three types of whistleblower statutes, has chosen very specific words out of all of the words that they can choose in the English language. And what we see here is we range from Title VII, which requires for protection, only the barest minimal activity on the part of the employee. It just has to oppose. And there is a whole lot of law, and I've given seminars on what's opposition. You have to do very, very little to oppose and gain protection under the Title VII. Even if we accept everything you've just said, how do you get around our court's decision in City of Passaic? City of Passaic doesn't deal with 510, does it? It deals with the Clean Water Act, and it held, and correct me if I'm wrong, that the word proceeding applies to intra-corporate complaints. And here we have an intra-corporate complaint. The Clean Water Act is interpreting a statute that is akin and almost identical to the Fair Labor Standards Act, not akin to Section 510. I had that, and I have to confess, Your Honor, I lost the language. Right. Well, I have the Fair Labor Standards Act language in front of me, which is quite similar to the ERISA language we're interpreting here. No, it's not. Which is as opposed to the, I agree with you, that the Title VII language is much more favorable to the employee because the opposition clause is clearly a lower threshold. And so is the, Your Honor, with all respect, the Fair Labor Standards Act and the Clean Water Act, the whistleblower language is almost identical. And it deals with discharging someone because the employee has filed a complaint or has instituted or caused to be instituted any proceeding. The 510 is much more passive. It requires some proceeding to have been instituted before the employee gets involved in it. Yeah, but don't we have to look at this? This is a remedial statute. And the notion that the statute must be construed in a manner that the person taking the first step by complaining to an employer is not going to be discharged without the matter getting off the ground. In other words, this is, isn't it sort of logical to say that the inquiry must be, especially in a remedial statute, encompass someone who's complaining to the boss about wrongdoing? Well, it may be logical, Your Honor, but that's not what Congress drafted. Number one. Number two is there are a whole lot of avenues for the employee to avail himself of if the employee thinks that the employer is doing something wrong, like go to the Department of Labor. Well, but suppose very few employees are going to go to the Department of Labor. If they're going to make internal complaints and say, look, this and so forth and so on is wrong or it's illegal and so forth, it's never going to get to an inquiry by the employer if the employee is discharged before the thing gets off the ground. Far, far fewer employees are going to get discharged on the spot for rendering, for making a complaint about their ERISA protection than this court is going to see in ridiculous lawsuits like this one availing themselves of the alleged protection. So when we're, you know, the fact that it may be logical and the fact that it may give somebody a right that they don't otherwise have, it may be appealing to all of us, Your Honor, but that's not what the law says and it's not what the statute says. I'll say, can't the inquiry encompass what will be the first step to an inquiry, namely, that someone says this is not right, requiring someone to look into the person they complained to, well, let me look into this, whether this is illegal, it's being done. So doesn't the inquiry by its very nature encompass the thing that kicked off and engendered the inquiry? It doesn't, Your Honor, and it doesn't because if Congress wanted to say that you can't discharge somebody because they have filed a complaint or made a complaint, they could have said that because they said it with the Fair Labor Standards Act. Yeah, but they didn't say it in the Clean Water Act. I think the Clean Water Act is virtually identical, is it not, Your Honor? I think it says file a complaint. No, it said institute at any proceedings. Okay. And that's where our court in 1987 said that it could be an intra-corporate complaint. But that is not, it still is not what this law says. It doesn't say institute at anything. So that's the key difference. You're saying that here it's passive and the other one requires someone to institute. And, Your Honor, you just can't redraft the law. I guess the question becomes really what impact our interpretation of a word in another statute is different as to the question of ambiguity. When we're looking at ambiguity, do we have to look at each word within the context of the statute that we're examining, or can we look at our parallel analysis from a case that was decided, in this case, in 1987? Your Honor, I think you can look at parallel analysis. I think you also have to look at what you may have overlooked when you did that analysis, and that is the whole statutory scheme of how Congress decided to draft employee protective statutes, and the Court shouldn't be inventing them. Well, and it's also the case, I suppose, that from one Congress to another in different acts, they may have different abilities to pass different laws depending upon the makeup of the Congress at that time. I guess that's your point, is that you're asking us not to transport the verbiage from one statute passed in one year into an entirely different statute passed at a different time. Am I understanding? I think that's correct, and I think that the practical impact is important. As this panel knows, I don't know what the percentage is anymore, but I know a lot of your time is devoted to employment cases, has been for years, and I think that the effect of doing this is just to create more employment litigation rather than less. It's giving employees another basis for suing. If we went one way in the Clean Water Act case, how can we go against that in ERISA case? It's something we've already done in clean water. How would we justify a very narrow construction of inquiry in this case? I don't know whether when you're talking about narrow, it's different statutory language for sure. And in one, the one law contemplates the employee taking the initiative and starting something. The other law contemplates the employee being a participant in a 510 proceeding. Well, the employee in the clean water doesn't have to file any formal complaint. You'd just be making, as you would, as an employer would say, making trouble and pointing out things to co-employees or to supervisors. And we interpreted that very broadly. And I think you would say broadly. But, I mean, we could have justified saying that, look, that was just someone who's moaning about something but didn't make a complaint to an official, a government official. I think you could have, and I think you should have. But that's not the same statutory language that you have here. It's different. And that's not a reason for doing it here. The law is a little different, too. I mean, the Clean Water Act has different purposes than ERISA has. We want to encourage people who are not in government to enforce the law by making sure that their participation would not be squelched in the first instance. Well, 502 gives an employee a right to vitiate their own private rights in ERISA. Someone rendering a complaint about how ERISA is administered, Your Honor, I just can't imagine how that would happen. I don't know whether this Court's ever read ERISA or how many ERISA cases you've had, but it's heavy stuff, man. It's behind employment cases. It's up there. It's heavy. It's tough to wade through. And it's hard for me to imagine that anybody wanted employees to be the private attorney generals for enforcing what's essentially a tax law that the people who practice it don't even understand. So I think it just opens the floodgates. There are four cases out there, four main cases that get cited. Which one do you think is, on this question, which one do you think is the strongest case in your favor that we should look at? Well, if you look at the four cases, Your Honor, the Hashimoto case is, I think, three of them. Let me just ask you, which one is the strongest case in your favor? King. King, okay. King. All right. Three of them are preemption cases, so they don't even decide the substantive rights. And as the panel knows, preemption is, if it's arguably one way or another, it's preemption. So it wasn't deciding the merits. King is the only one who went further and decided on the merits and decided what we think is the appropriate way. That's all I have to offer, unless the panel has any more questions. I appreciate your time. Thank you. Thank you for being here. Mr. Swidler? Your Honor, I just want to clear up one issue. Going to the Clean Water Act in the exact language of this court, it was the statutory term proceeding within 507A is ambiguous. The term may reasonably be in vogue to encompass a range of complaint activity of varying degrees of formal legal status. It goes on to determine that intracorporate complaint reporting is an activity fully protected under the terms of that provision. As far as the term inquiry, inquiry is, again, it's the seek of truth. And that includes bringing an issue to a supervisor and to see how they will respond to it. It includes looking at documentation and determining that Social Security numbers are false. It includes going over documents that may be part of your job. And the issue here is that to interpret the word inquiry, which is not in the FLSA, but is in this language, and in fact is why the Second Circuit said this is so much broader than the FLSA, we can't just ignore that. And there's nothing about inquiry that should make us think it requires some legal or administrative action. Inquiry, again, is the search for truth. And reading through the amended complaint, my client was learning about unlawful conduct. She was talking to her managers about unlawful conduct. That is an inquiry as the word is commonly understood. And so I don't see, I don't believe the defendant's position is fair because it's essentially not looking at the term inquiry in the correct light. Your complaint is so general and on information and belief and not specific. It sounds like she was just bitching and moaning, quite frankly. Your Honor, my client was in charge of enrolling clients into ERISA protected plans. She learned that they had fake Social Security numbers. She learned that they were not members and were not permitted to be in the plans. And this is in the complaint. She learned that there was one person who was on disability who was working. What's the inquiry she's making? She's complaining about all these things. Absolutely, Your Honor. The inquiry is she's sitting at her job watching somebody, watching somebody working who's making a representation to the insurance company that they can't work. Sitting there and observing that, that is an inquiry. It's an inquiry the same way as if I'm reviewing documents and I determine, wait a minute, this Social Security card does not match what I wrote on this document. That's an inquiry. An inquiry does not have to be verbal. All right. Well, let me make an observation. What's your response to opposing counsel's distinction between the verbiage in the Clean Water Act and the verbiage in this statute? I don't believe there is a significant distinction. And I don't believe that when you look at the two acts and you look at what the both are – I'm not asking your belief. He made a specific argument, as I understand it, that the Clean Water Act requires an affirmative act where someone make a complaint, and this ERISA statute is written more passively. What do you say directly to counter that? I don't believe that's accurate because the fact is that you can give information, you can be testified, or you can be about to testify in a proceeding or an inquiry under ERISA. And is that different than complaining under the Clean Water Act? I don't believe it is. If you're giving information in an inquiry, that is the same as with the Clean Water Act, as instituting a proceeding, because either one can be interpreted to mean that you're giving information to the supervisor and essentially initiating the complaint. Your Honor, if I could just – and I am out of time, and I will obviously acknowledge that, but if I could have 10 more seconds of Your Honor's time. I would like to bring up – and it was mentioned in the briefs, but there is a U.S. Supreme Court case, and it is, admittingly, on Title VII, and this is the case, of course, on Crawford v. Metropolit, the government of Nashville. And at any rate, Judge Souter specifically finds – and it's the inverse here, but I think it's very relevant – that there is no reason to doubt, and she's talking about – the judge is talking, of course, about the word oppose, but – What's the name of the case? Oh, I'm sorry, Your Honor. It is Supreme Court Vicki S. Crawford v. the government of Nashville and Davidson County, Tennessee. It's 129 S. Court 846. And it is, again, Judge Souter's decision, and it writes, there is then no reason to doubt that one can oppose by responding by someone else's question, just as surely as by provoking the discussion. And nothing in the statute requires a freakish rule, protecting an employee who reports discrimination on her own initiative, but not one who reports the same discrimination in the same words when her boss asks a question. What statute is that under? Well, that is under Title VII, Your Honor, and it is talking about the opposition language, which is obviously not in this statute, but it talks about this freakish rule, where you have a different response just because somebody has said something to you first, and that is what the defense's position in this case is, and that's why we're asking this case be reversed. All right. We thank you, Mr. Swidler, and we thank all counsel for their helpful arguments, and we'll take this matter under advise.